Thank you, and may it please the Court. My name is Dominic Lanza. I represent the United States in this matter. I'm an AUSA from the District of Arizona, and I'd like to reserve two minutes for rebuttal. The District Court erred when it vacated the defendant's conviction as a consequence of not being able to immediately engage in resentencing. Although the Court was understandably frustrated with the circumstance before it, the remedy that it chose, again, wiping out the underlying conviction, was an impermissible one. As we've set out in our briefs, there are two permissible options that a district court can pursue when it encounters a situation like the one here. That is, it needs to resentence a defendant who's already been deported. The first option is what I'll call the Plancarte Alvarez option. That is that with permission from this Court, the underlying court can simply affirm the erroneous sentence without prejudice to the defendant's rights and seek to reopen it at a later time. And the second option is what I'll call the Reyes-Sanchez option, which is simply having the case stay on the district court's docket pending resentencing until such time as the defendant comes back so that resentencing can happen. Here, for a variety of reasons, some of which the government assumes responsibility for, the Plancarte Alvarez or, excuse me, the Plancarte option wasn't available. But we think the district court erred when it leapt from the conclusion that the Plancarte option wasn't available to the conclusion that the only thing it had left in its arsenal was to throw out the entire case. What the court should have done was simply follow the Reyes-Sanchez option and allow the case to stay on its docket pending resentencing, which, of course, is what the defendant himself acknowledged was the permissible thing to do when the case initially came back on remand. So what are the prospects of actually having a resentencing? The prospects – there's no specific evidence in the record about why – whether or not this particular defendant has come back or whether he will come back. It's – it shouldn't be any surprise that defendants who have been prosecuted for illegal reentry do come back from time to time. We have a lot of repeat offenders in our district. But for purposes of mootness to the extent that is one of the court's concerns, we do not believe we need to make any showing about this defendant's propensity to come back in order to show that we have a right to preserve the underlying conviction. The Villamonte case that we've cited in our briefs makes that clear. There, the defendants were convicted. The case went up on appeal. Their convictions were overturned on a Fourth Amendment issue, yet they were deported while the appellate proceedings, excuse me, were pending. And it went up to the Supreme Court based on the government's attempt to reinstate the convictions. The court, in footnote 2 of the opinion, dealt rather quickly with the notion that the government's appeal might be moot. It said that felony convictions always have collateral consequences, and therefore the government has a cognizable right to try to reinstate convictions even if a defendant has already been deported. So I think that there's two sides of the coin on what to think about on what the district court did in this case. First, what were the permissible options? And, second, why what the district court did was improper. I won't ---- Has the government ever proposed to issue a visa to permit him to return? There's no evidence in the record one way or another about the visa. I will state that the ---- So we've got a big fence and lots of guards making certain he can't get back to accomplish the resentencing which the government seeks. Right. And he's overcome those guards and those ---- Well, yeah, but should he have to do that in order to go to court if the government wants him to go to court? I mean, why hasn't there been any discussion about the possibility? I mean, I'm not going to hold my breath until they accept the invitation. Right. But he doesn't even have the right to return to the courthouse. So that's not a problem of his making. It's the government that keeps him out of the country. So has the government proposed to issue him a visa? No, Your Honor. We're not ---- we're not proposed to issue a visa. But the case all makes clear that the issue of the ---- the invitation to issue a visa isn't a prerequisite to maintain a legitimate conviction in a case where the defendant pled guilty and chose not to even challenge his conviction on an official direction. But isn't this a situation where this particular defendant served more time than he should have served? I disagree with that, Your Honor, in that we believe that ---- I didn't say. I just said, isn't this a situation where? You're saying no. Why? Because the defendant was sentenced to 30 months. We believe the 30-month sentence was appropriate. In the initial appeal in this case, this Court did not hold that the district court erred by imposing the 16-level enhancement because the 16-level enhancement could never be applied. It simply held that the factual record wasn't enough to support the enhancement. And therefore, it said, on remand, the parties will have a full opportunity to put the proper evidence in the record to support the 16-level enhancement. So we believe the initial sentence of 30 months was appropriate. The defendant didn't serve any additional time. And then what happened on remand so that you could determine whether it was appropriate? The issue that was contested in the initial appeal was whether it was appropriate. I'm just saying you read to us that we remanded and said that on remand, both parties will have full opportunity to determine what is adequate, and what happened. There has not been a resentencing proceeding. And why is that? Because the defendant isn't available under Rule 45. Why isn't he available? Because he was deported. He finished the service. Okay. So the reason you didn't have the kind of hearing we said is because the government frustrated that hearing. That is correct. But think of the alternative. Should the government have maintained the defendant in administrative custody pending resentencing after his 30-month sentence had ended? That wouldn't have been a permissible remedy either. Why wasn't it permissible to maintain a defendant in custody while he had a sentencing hearing? I don't believe there would be a legal basis after the defendant had finished serving his imprisonment sentence to continue holding him in custody for however long it took for the district court in the busy district of Arizona to find time for a resentencing proceeding. The authority of which I'm aware is that the government has authority to maintain it. I don't believe it would have been permissible to maintain a defendant in custody   while he had a sentencing hearing. Did anyone ask the prisoner whether he would like to be kept here until he could have the sentencing hearing that he wanted? There's no evidence in the record on that. And I guess the – I understand the Court's concerns about the circumstance, and the district court here was understandably frustrated with it. The point is – So you want us to keep a file open sitting on the shelf, screwing up the district court statistics, turning this case into bleak house because the government elected not to give him the option of staying and elected not to give him the option of returning. All the cards are in the government's hands. Why should we give you still another card to keep the case alive on the shelf when it's at everybody else's imposition, or an imposition on everybody else? The case law makes clear that these are the two options, the Plancarte option or Judge Easterbrook's very clear and well-written decision in Reyes-Sanchez, which makes clear that the concern – He can have the best card to play. So evidently he can write a clear decision. I don't – the district court was understandably frustrated. These cases linger on the docket. Courts want to have a clear docket. But I just want to put in perspective, Reyes-Sanchez, Judge Easterbrook used very powerful language when describing that this is at most administrative untidiness. And I want to contrast that with the consequences of what district court did in this case, which was actually throwing out and vacating legitimate conviction. We understand that the administrative untidiness – I'm not really sure the practical impact of that matter is either. I mean, this case strikes me as one that only a procedure professor could love. Now, all of you have been dealt the hand. You have to play it. I don't fault you for that. But if he does come back to the country and is apprehended, the fact of everything that happened before would be before the court, whether or not there was a formal conviction or not, is there really any practical impact? What's that? The practical impact is if the defendant comes back, it's exactly like the Gomez-Torres case, which we filed the 28-J letter on a few days ago. There the defendant had been convicted. It went up to the Fifth Circuit. He was deported before the mandate issued. The Fifth Circuit said we remand for resentencing. And there the district court did just what we're asking this Court to order the district court to do here, which was simply hold the case on its docket in case the defendant came back. Sure enough, there the defendant came back four years later. In that circumstance, the district court, he was charged with a new reentry offense. The district court had a proceeding at which it first finished the resentencing for the earlier offense, then counted the criminal history points for that prior conviction for purposes of the new sentencing on the 2010 offense. Kennedy, which is subject to advisory guidelines. So it's not like the district judge wouldn't know about the previous episode and could take that into account, whatever the number of criminal history points are. It would be a significant difference, Your Honor, to have a defendant where we were the advisory guidelines were X to Y and the government were forced to ask for an upward variance under 3553, versus a case where the guidelines were at a higher range to begin with. And so it is an important difference between having a conviction and not having a conviction. I will also say that the government should have considered that before it declined not to give the defendant the option of coming back or of staying to get the resentencing done. And I agree, Your Honor, those are options that we could have undertaken, but I just want to make clear that the case law says we are not obligated to do those things in order to preserve a conviction that has never been challenged by the defendant at any point throughout these proceedings. Kennedy, you know, you get a lot of elections in this case, including whether to appeal and create precedential law rather than just leaving the decision. So I don't know. They're your elections to take and you're making them all, but we'll see whether it turns out to be a wise choice or not. I'd like to reserve the remainder of my time. Certainly. Thank you, Your Honor. Good morning. May it please the Court. Elizabeth Krushak on behalf of Apolline Napoleon Flores, RVSU. The government has only itself to blame for the dismissal of this case. It had every opportunity to obtain relief, but it did not act in a timely fashion. And the consequence of that is that the case has become moot, and therefore the district court's dismissal should be affirmed. Well, how is it moot? I mean, the theoretical possibilities are certainly sitting out there, and it's not unheard of for people who have been removed to make their way back into this country. That is true. In this case, though, the sentence that Mr. Flores served has expired. He served both the custodial portion of his sentence as well as the supervised release portion of his sentence. The cases such as Plancarte Alvarez are based on the fact that the defendant is still subject to supervised release, such that the case in front of the district court is still technically open because the defendant is still serving a portion of the sentence. Here the sentence has completely expired, and there's nothing that the district court can do. So the district court was left with a situation in which it had a mandate that it could not follow. But you're not asking for everything to be left in place. You're asking for the conviction to be set aside. That's not quite the same as mootness, just let everything sit the way it is. Our position is that the district court was correct to dismiss the case in these circumstances. The district court had – I suppose there were two options for the district  court. It could have left the case on its docket, or it could have dismissed the case. The district court found it wasn't sensible to believe that this particular defendant would return. And, in fact, he has not returned, and he served his entire term of supervised release. Kennedy, nobody really knows whether he's returned. I suppose not, but there's no evidence that he's returned. Do you have any reason to think if he were given the opportunity to return for the sake of a resentencing hearing, he would do so? I mean, your brief noted that he wasn't offered a visa. Suppose the government offers him a visa. I don't know. We have been unable to contact him, and so I don't know. So we are dancing here with a procedural issue which may force us to make a decision that has no real-world impact that we know of. I hope the two of you had a nice trip to San Francisco, but I'm not sure what else this case accomplishes. Does it accomplish anything? I'm not sure either, Your Honor. I think it would accomplish for the district court to be able to manage its own documents. Well, you're not here voluntarily, are you? Pardon me? You're not here voluntarily. You're the appellee. Yes. That's a good response. They made me come. I'm happy to answer any questions that the Court may have about our position in the briefs, but it seems that you are conversant with the issues. Thank you. Thank you, Your Honor. It seems that the Court is troubled with the government's decision to appeal in this case. Well, a series of decisions. I mean, it looks like it's a series of decisions by the government not to raise the issue to the prior panel when it might have done something different, not to try to figure out if there was a practical solution, although I think it's a little unlikely that the defendant would have elected to remain in administrative custody, and unlikely he would have come back if offered a visa to be in custody to be resentenced. But any practical solution seems to have been set aside by the government in favor of trying to hold on to the possibility, however remote, that might affect sentencing some days down the road. That's a lot to ask for that theoretical possibility, isn't it? And I understand that it's theoretical, but Gomez-Torres makes clear that this isn't some one-in-a-million shot that this is going to happen. Gomez-Torres is this case. Gomez-Torres is a case where the defendant was obtained a sentencing remand, yet he was deported at the time, so the case sat on the district court's docket, and sure enough, he came back, and it had tangible, real-world consequences that were important to the government. So I guess one final point I want to focus on is the district court did not have any authority to do what it did here. The court – this Court's mandate in the initial appeal was to engage in a resentencing. The district court didn't do that throughout the conviction. In Luong, this Court – I know, but the government made it impossible for the Court to follow that mandate. It didn't make it – it made it impossible to immediately follow the mandate. And what Judge Easterbrook so clearly points out in Reyes-Sanchez is what to do in that circumstance. I hope all our cases aren't going to depend on Judge Easterbrook. And I just want the – the defendant has not cited a case, and the district court has never cited a case in recorded history that authorizes district courts to throw out valid convictions because they're frustrated with the pace of resentencing. It is such an unwarranted windfall when you compare it to the utmost administrative untidiness. I guess the biggest problem that I think you ought to be hearing is, here's a defendant who served all the time that he was supposed to have served, who, as a product of all of your decisions, may have the district court in a bind that he can't do what he should have done, and you're just saying, don't find an exception, Judge. And I guess what I'm trying to say to you is, here's a district court who had this case with the government causing it all, and he made a decision because there has to be a time when somebody says enough is enough. And now you're suggesting to me, a former D.J., in similar situations, oh, we've got to reverse what he did. And I understand. After all you've done and after he served where he had to serve. And the relief we're seeking here, Your Honor, would not result in any unfair prejudice for the defendant. He is not going to serve any more time. He is going to get the resentencing that he sought. The only thing that we're asking here is to cause some minor administrative untidiness on the district court's docket in order to prevent throwing out a valid conviction. Thank you. Thank you, counsel. Thank you, Mr. Argyle. It will be submitted.
judges: Reinhardt, Clifton, Smith